Robert LOW, D.O. and Stephen Smith, M.D., Petitioners,

v.

Thomas J. HENRY and the Law Offices of Thomas J. Henry, Respondents.

No. 04–0452.

Supreme Court of Texas.

Argued Feb. 15, 2005.

Decided April 20, 2007.

Carlos Villarreal, Brian Charles Miller, Robert J. Seerden and J. Kevin Oncken, for Petitioners.

Paul D. Andrews, Keith Matthew Gould and Paul D. Andrews, for Respondents.

John C. Marshall, III, Marshall & McCracken, Melanie Sky Breedlove, Lanette Lurleen Lutich, Cooper & Scully, P.C., Houston, Michael L. Hurst, Hermes Sargent & Bates, Michael Berry, Thompson & Knight, John A. Scully, Cooper & Scully, P.C., Dallas, Jennifer P. Henry, Thompson & Knight, Fort Worth, for Other.

Donald P. Wilcox, Susan G. Taylor, Austin, for Amicus Curiae.

Justice WAINWRIGHT delivered the opinion of the Court.

Texas follows a "fair notice" standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 230 (Tex.2004); *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896–97 (Tex.2000); *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993); *see also* Tex.R. Civ. P. 47(a). However, the actual facts and evidence of a specific case limit this relatively liberal standard. Chapter 10 of the Texas Civil Practice and Remedies Code requires a pleading's signatory to certify that he or she conducted a reasonable inquiry into the allegations and concluded that each allegation or other factual contention in the pleading has or is likely to have evidentiary support. Because the attorney who filed the petition in this case obtained and directed the review of evidence that disproved some of the allegations pled against some of the defendants, the trial court correctly found that the attorney violated Chapter 10. However, we hold that the trial court abused its discretion in not providing a sufficient basis to support the imposition of a $50,000 penalty. We reverse the court of appeals' judgment and remand the case to the trial court for proceedings consistent with this opinion.

## I. Factual and Procedural Background

On November 20, 1999, Henry White was admitted to Columbia North Bay Hospital after suffering a stroke. Dr. Stephen Smith treated White in the emergency room for less than one hour. Dr. Robert Low cared for him for four days before White was transferred to another hospital. White was comatose at the time of the transfer. He died in December 1999.

On January 31, 2002, Joyce White (both individually and as representative of her husband Henry White's estate) sued the alleged manufacturers, designers, and distributors of the drug known as Propulsid,[1] Coastal Bend Hospital, Inc. d/b/a Columbia North Bay Hospital, eight physicians,[2] and nurse Donna McMahon for damages flowing from Henry White's death. Although most of the claims involved the drug Propulsid, some alleged that the physicians and hospital were negligent in Henry White's medical treatment.

Attorney Thomas J. Henry represented Joyce White when he filed the petition. His office received copies of Henry White's medical records months before he filed the petition. Henry filed a motion to withdraw as counsel on the same day he filed the petition. Henry continued to represent Joyce White until the trial court granted the motion to withdraw on May 6, 2002.

On May 28, 2002, Dr. Smith filed a motion for sanctions against Joyce White and Henry for alleged violations of Texas Rule of Civil Procedure 13 and chapters 9 and 10 of the Texas Civil Practice and Remedies Code. Dr. Low filed the same motion.[3] Both physicians argued that none of the medical records from the hospital at which the physicians treated White contained any reference to either doctor having prescribed or provided Propulsid to White. On June 10, Joyce White nonsuited the case. The physicians' motions for sanctions remained pending.

The trial court held a hearing on the physicians' motions on July 30, 2002. Henry did not attend or testify but appeared through counsel. On July 31, 2002, the trial court granted the motions and ordered Henry to pay $25,000 in sanctions on each motion, for a total of $50,000. On August 2, 2002, the trial court entered a revised judgment that incorporated findings of fact and conclusions of law. On August 26, 2002, Henry filed a motion for new trial and a motion to vacate, modify, correct, or reform the sanctions order. On September 23, 2002, Henry filed a supplemental motion. On October 15, 2002, the trial court held a hearing on Henry's motions. After hearing more testimony, including Henry's, the trial court ultimately denied admission of all additional evidence and denied Henry's motion to modify the judgment. Henry filed a motion to reconsider, challenging the adequacy of the trial court's findings of fact and conclusions of law for the first time. The trial court denied this motion and rejected as untimely all arguments not contained in the original motion for new trial and motion to vacate, modify, correct or reform the judgment as untimely. Henry appealed.

An en banc court of appeals reversed, holding that because the allegations

---

1. Johnson & Johnson, Inc., Janssen Pharmaceutica, Inc., Janssen Pharmaceutica, N.V., and Janssen Research Foundation.

2. James A. Mobley, M.D., Delbert Edwardson, M.D., Robert Low, D.O., Stephen Smith, M.D., Dr. McManus, Randall Simonsen, M.D., Jaime Gonzalez, M.D., and Isabel Menendez, M.D.

3. The physicians' attorney later indicated on the record that the physicians would not seek sanctions against Joyce White.

against the physicians were made in the alternative, sanctions under chapter 10 of the Texas Civil Practice and Remedies Code were inappropriate. 132 S.W.3d 180, 187. The court also held that the physicians' motions did not support sanctions under Chapter 10 for unrelated prior litigation and that the trial court's order failed to meet the specificity requirements of Chapter 10. *Id.* at 187–88. The dissenting justices argued that the trial court did not abuse its discretion and that Henry waived his other complaints. *Id.* at 190–91. The physicians petitioned this Court for review.

## II. Applicable Law and Standard of Review

■■■ We review the imposition of sanctions here under the same standard we review sanctions under Rule 13—abuse of discretion. *See Am. Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex. 2006); *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire,* 134 S.W.3d at 838–39. To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex. 2003) (citing *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991)). Generally, courts presume that pleadings and other papers are filed in good faith. *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id.* at 731.

Chapters 9 and 10 of the Texas Civil Practice and Remedies Code and rule 13 of the Texas Rules of Civil Procedure allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. Chapter 9 of the Texas Civil Practice and Remedies Code only applies in proceedings in which neither Rule 13 nor Chapter 10 applies. TEX. CIV. PRAC. & REM.CODE § 9.012(h). Rule 13 authorizes the imposition of the sanctions listed in Rule 215.2(b), which only provides for a monetary penalty based on expenses, court costs, or attorney's fees. Because the trial court ordered Henry to pay $50,000 in penalties not based on expenses, court costs, or attorney's fees, and because the trial court's written order specifically orders the penalty pursuant to chapter 10 of the Texas Civil Practice and Remedies Code, we review the trial court's order in light of chapter 10. Chapter 10 provides that:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportu-

nity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM.CODE § 10.001. Under Section 10.001, the signer of a pleading or motion certifies that *each* claim, *each* allegation, and *each* denial is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry. The statute dictates that each claim and each allegation be individually evaluated for support. *Id.* The fact that an allegation or claim is alleged against several defendants—so-called "group pleadings"—does not relieve the party from meeting the express requirements of Chapter 10. Each claim against each defendant must satisfy Chapter 10.

██ Likewise, alternative pleading under Texas Rule of Civil Procedure 48 does not excuse noncompliance with Chapter 10. Pleading in the alternative allows multiple allegations, which may even conflict, to be alleged against a defendant, but there still must be a reasonable basis for each alternative allegation. Pleading in the alternative does not permit alleging a claim with no reasonable basis in fact or law "in the alternative" of a claim that does have support. That is simply not permitted by Texas law. *See* TEX. CIV. PRAC. & REM.CODE § 10.001. Each allegation and factual contention in a pleading or motion must have, or be likely to have, evidentiary support after a reasonable investigation. *Id.*

The language of section 10.001 of the Texas Civil Practice and Remedies Code tracks much of the language in Federal Rule of Civil Procedure 11(b):

Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Although the text of Rule 11 does not specify that *each* claim, allegation, and denial be based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry, Federal Rule of Civil Procedure 8(e), which allows pleading in the alternative, specifically subjects all such pleadings to the requirements of Rule 11. *See Osborn v. Haley,* —— U.S. ——, —— n. 6, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007) (noting that "subject to Rule 11 obligations, parties may plead claims or defense [sic] 'alternately or hypothetically' "). Neither Rule 8 nor Rule 11 permits a plaintiff "to intentionally ignore relevant evidence in order to assert unfounded claims." *Tibor Mach. Prods., Inc. v. Freu-*

*denberg–NOK Gen. P'ship,* 967 F.Supp. 1006, 1014 (N.D.Ill.1997).

■ The physicians argue that by filing the pleading in this case, Henry certified that to the best of his knowledge, information, and belief, the factual contentions in the pleading had or were likely to have evidentiary support. A reasonable inquiry into the allegations would have proven otherwise. *See* TEX. CIV. PRAC. & REM.CODE § 10.001(3). White's medical records, which were in Henry's possession before he filed the lawsuit, indicated that neither physician ever prescribed or administered the drug to White. The physicians argue that Henry violated Chapter 10 by alleging that they prescribed and administered Propulsid in spite of the information to the contrary in White's medical records. We agree with the physicians.

Undeniably, the petition focuses on Propulsid, a drug used to treat gastric reflux. The first sentence of the fact section of the petition summarizes, "The Plaintiffs are victims of the Defendants' decision to manufacture, market, design, promote, and/or distribute [Propulsid]." The petition claims that Johnson & Johnson, Janssen Pharmaceutica, and Janssen Research Foundation were negligent, negligent per se, and strictly liable for the defective design, marketing, manufacture, and distribution of the drug and for the violation of specified statutes and regulations. The petition also includes fraud and misrepresentation claims against Johnson & Johnson, Janssen Pharmaceutica, and Janssen Research Foundation regarding the safety and efficacy of the drug. The petition further alleges that collectively the "defendants" breached implied and express warranties. Finally, the petition makes the following sixteen allegations of negligence against the "Defendant Physicians and Hospital"—eight physicians and a hospital:

a. In failing to weigh the substantial risks involved in prescribing the drug against its potential benefits, if any;

b. In failing to try alternate treatments such as antacids and gastric acid reducing agents before prescribing the drug;

c. In failing to advise the Plaintiffs about changes in lifestyle before prescribing the drug;

d. In failing to obtain a careful history of the Plaintiffs and in prescribing the drug in the presence of underlying cardiac conditions and other conditions or family history that would preclude the use of the drug;

e. In failing to determine the Plaintiffs' medications and in prescribing the drug along with contraindicated medications;

f. In failing to perform ECG monitoring at baseline and in failing to refer to prior ECGs performed on the Plaintiffs;

g. In failing to warn or adequately warn the Plaintiffs concerning the contraindications, warnings; precautions, adverse reactions, and drug interactions associated with the use f[sic] the drug;

h. In failing to advise the Plaintiffs concerning any significant changes in the patient package inserts and <u>Physicians' Desk Reference</u>;

i. In failing to advise the Plaintiffs concerning the contents of FDA warnings and "Dear Doctor" letters;

j. In failing to advise the Plaintiffs concerning the reasons for withdrawal of the drug from the market;

k. In failing to warn the Plaintiffs concerning abnormal EGGs [sic] and prolonged QTC intervals;

l. In failing to properly diagnose the cardiac conditions caused by the drug;

m. In failing to properly read and interpret the Plaintiffs' ECGs;

n. In failing to administer the proper treatment for the cardiac conditions caused by the drug;

o. In failing to discontinue the drug; or

p. In failing to continue to monitor the Plaintiffs, including ECG monitoring, electrolyte monitoring, prescription drug monitoring, and cardiac condition monitoring.

In six places—paragraphs a, b, c, d, e, and o—the petition alleges that Drs. Low and Smith provided or prescribed the drug to White. The other paragraphs allege negligent conduct other than prescribing or providing Propulsid to White.

However, Drs. Low and Smith presented undisputed evidence at the trial court that neither doctor ever prescribed or administered Propulsid to White and that a pre-suit review of White's medical records would have confirmed that fact. Dr. Low filed an affidavit with his motion for sanctions swearing that "[a]t no time during [his] involvement with this patient did [he] ever prescribe, provide, administer or order Propulsid for Mr. White." Dr. Smith filed an affidavit making the same statement with his motion. At the July 30, 2002 hearing on the motions, the physicians again testified that they did not administer or prescribe Propulsid. The testimony established that Dr. Smith was White's doctor for less than an hour in the emergency room, and Dr. Low, an internal medicine doctor at Columbia North Bay, provided care to White for four days after he arrived at Columbia North Bay and before his transfer to a facility in Corpus Christi. Dr. Low also confirmed that "anyone familiar with reviewing a medical record could easily have confirmed [Dr. Low's] testimony and the fact that [Dr. Low] had nothing to do with Propulsid had

they simply reviewed the record." Dr. Smith testified that White's medical record contains no reference to Dr. Smith's ever prescribing or administering Propulsid to White. In fact, Henry does not dispute Dr. Low's testimony that White had not been taking Propulsid approximately two weeks before his treatment by the physicians. Dr. Smith similarly testified that he was informed that White had not been taking Propulsid "for some time" before his arrival at the Columbia North Bay emergency room and his subsequent treatment by Drs. Low and Smith.

The evidence at the hearing supports the trial court's conclusion that:

> Based upon the totality of the evidence admitted during the hearing on the Motions for Sanctions, each and all of the allegations brought against Drs. Low ,and Smith, and therefore the lawsuit brought against these physicians, did not, on January 31, 2002, and do not now, have evidentiary support; nor were they on January 31, 2002, likely to have evidentiary support after a reasonable opportunity for further investigation. . . .

Under chapter 10 of the Texas Civil Practice and Remedies Code, the physicians were not required to specifically show bad faith or malicious intent, just that Henry certified he made a reasonable inquiry into all of the allegations when he did not and that he certified that all the allegations in the petition had evidentiary support, or were likely to have evidentiary support, when some allegations did not. We conclude that the trial court did not abuse its discretion in concluding that Henry failed to meet the standard in Chapter 10.

### III. Notice

■ Henry argues that the trial court violated his rights to due process and due

course of law because he was given inadequate notice of the subject matter of the hearing on the physicians' motions for sanctions. First, he argues that he only received notice of the hearing six days before the hearing. Second, he argues that he had no notice that sanctions under chapter 10 of the Texas Civil Practice and Remedies Code were being sought and that his conduct in other cases could be at issue at the hearing. Finally, Henry complains that the trial court's findings were insufficient to support sanctions under chapter 10 of the Civil Practice and Remedies Code. We overrule Henry's complaints.

Section 10.003 of the Texas Civil Practice and Remedies Code requires a court to provide the subject of a sanctions motion with "notice of the allegations and a reasonable opportunity to respond." Both physicians' motions specifically based sanctions on Chapter 10 and contain a certificate of service stating that the motions were sent to Henry in accordance with the Texas Rules of Civil Procedure on May 29, 2002. Henry did not object, made no argument, and provided no evidence that he did not receive the physicians' motions for sanctions at the July 30, 2002 hearing. Only later, at a hearing on Henry's motion for new trial and motion to vacate, modify, correct, or reform the order does Henry suggest that he did not receive adequate notice of the July 30, 2002 hearing. In Henry's brief to the court of appeals, he admits that he received notice of the hearing six days before the hearing. Even assuming that six-day notice was the first notice he received, the proper method to preserve his notice complaint was to bring the lack of adequate notice to the attention of the trial court at the hearing, object to the hearing going forward, and/or move for a continuance. Although Henry was represented by counsel at the July 30, 2002 hearing, he made no such complaint

or motion but participated in the hearing. Even if Henry had preserved his notice complaint, *see* Tex.R.App. P. 33.1(a)(1), he had a reasonable opportunity to respond under section 10.003 of the Texas Civil Practice and Remedies Code.

■ Henry also complains he did not have notice that the physicians sought sanctions under chapter 10 of the Civil Practice and Remedies code. He argues that the sanctions motions requested relief only under rule 13 of the Texas Rules of Civil Procedure and chapters 9 and 11 of the Texas Civil Practice and Remedies Code. Henry maintains that because the physicians did not move for sanctions under Chapter 10, the trial court abused its discretion in considering evidence of Henry's filings in other lawsuits. Henry's counsel did not object to the lack of notice that the physicians were seeking sanctions under Chapter 10 before or during the July 30, 2002 sanctions hearing. Henry's first complaint that he lacked notice of the subject matter of the hearing was in his motion for new trial. This objection was untimely.

■ Even if this objection had been timely, Henry had notice that the physicians sought sanctions under Chapter 10. The introductory paragraph of both physicians' motions explicitly state that the motions seek sanctions pursuant to chapter 10 of the Texas Civil Practice and Remedies Code. Further, the allegations made and relief sought are consistent with Chapter 10. Specifically, the motions request the trial court to order Henry to pay a monetary penalty to the Court, a sanction available only under Chapter 10. Tex. Civ. Prac. & Rem.Code § 10.004(c)(2); *see Sterling v. Alexander*, 99 S.W.3d 793, 799–800 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Because Henry failed to challenge receipt of the motions, he cannot

now deny having notice of the content of the motions. *In re B.L.D.,* 113 S.W.3d 340, 350–55 (Tex.2003). Thus, neither of Henry's notice complaints have merit.

■ As to Henry's argument that he did not receive notice that his conduct in other cases would be considered at the hearing, again, he failed to timely object. During the testimony of other physicians who had been served with identical pleadings prepared by Henry in other cases, Henry's attorney objected only to the relevance of the testimony. This does not preserve a due process complaint based on lack of notice.

■ Moreover, Henry waived any objection to the relevance of testimony about Henry's conduct in other proceedings by failing to establish a running exception. During the examination of Dr. Robert Mastin, a defendant doctor in a different suit filed by Henry, Henry's attorney objected to the relevance of the petition in the case. He requested a "running objection as to relevance" without specifying what he intended the objection to cover. The trial court overruled the objection and instructed Henry's attorney to make objections as necessary. Thereafter, Henry's attorney made occasional objections to relevance but failed to object to much of the testimony about his conduct in other cases. The trial court did not abuse its discretion in denying Henry's request for a running objection because his attorney failed to "plainly identif[y] the source of the objectionable testimony, the subject matter of the witness's testimony and the ways the testimony would be brought before the [court]." *Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 907 (Tex.2004). Thus, even if the testimony about Henry's conduct in other cases is irrelevant, Henry waived his objections to the bulk of that evidence.

■ Finally, Henry claims that the trial court's order, including the findings of fact and conclusions of law, was not specific enough to support sanctions under chapter 10 of the Texas Civil Practice and Remedies Code. Henry first raised this complaint in his first supplemental motion to vacate, modify, correct, or reform the modified judgment, which he filed on September 23, 2002. As we held in *Moritz, M.D. v. Preiss,* "[r]ead together, Rules 5, 329b(b) and 329b(e) demonstrate that an amended motion for new trial filed more than thirty days after the trial court signs a final judgment is untimely." 121 S.W.3d 715, 720 (Tex.2003). The trial court signed its revised order granting sanctions, including findings of fact and conclusions of law, on August 2, 2002, fifty-two days before Henry's complaint that the order was not sufficiently specific to support an award of sanctions under Chapter 10. Although we have recognized that "the trial court may, at its discretion, consider the grounds raised in an untimely motion and grant a new trial under its inherent authority before the court loses plenary power," the trial court in this case denied Henry's motion as untimely. *Id.* at 720. On appeal, Henry fails to challenge the trial court's ruling on the timeliness of his post-sanctions motions and thus has waived any complaint about the specificity of the trial court's order. *See* TEX.R.APP. P. 33.1(a). Despite Henry's waiver, as discussed below, we conclude that Henry's challenge fails on the merits: the evidence and the trial court's order support an award of sanctions under Chapter 10.

### IV. Amount of Sanction

■ Henry claims that the $50,000 sanction, a $25,000 sanction for the petition filed against each doctor, is excessive. The amount of the sanction is limited by the trial court's duty to exercise sound discretion. *Powell,* 811 S.W.2d at 917. A

trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it simply exercises that discretion in a different manner than reviewing appellate courts might. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). In *Powell* we held that a sanction under rule 215 of the Texas Rules of Civil Procedure, now rule 215.2, must relate directly to the abuse found and "be no more severe than necessary to satisfy its legitimate purpose." *Powell,* 811 S.W.2d at 917. Texas Rule of Civil Procedure 215.2 allows a trial court to disallow any further discovery; charge certain expenses, costs, or attorney's fees of one party against the offending party; order certain facts to be established as true; limit a party's ability to defend against or bring certain claims; strike pleadings or parts of pleadings; or find a party in contempt of court. In contrast, Chapter 10 authorizes a sanction ordering the offending party to, among other things, pay a penalty into the court, as ordered in this case. TEX. CIV. PRAC. & REM.CODE § 10.004. The only restriction on the amount of the penalty in the language of the statute is that the "sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* § 10.004(b); *see, e.g., Skepnek v. Mynatt,* 8 S.W.3d 377, 380 (Tex.App.-El Paso 1999, pet. denied) (upholding $25,000 sanc-

tion to be paid into registry of court under Chapter 10). The legislative history does not shed light on the question.

 Generally, a sanction cannot be excessive nor should it be assessed without appropriate guidelines. *See Powell,* 811 S.W.2d at 917.[4] Although this Court has not specifically identified factors for a trial court to consider when assessing penalties under Chapter 10, *see Altus Commc'ns., Inc. v. Meltzer & Martin, Inc.,* 829 S.W.2d 878, 883 (Tex.App.-Dallas 1992, no writ), the absence of an explanation of how a trial court determined that amount of sanctions when those sanctions are especially severe is inadequate. For example, in *Cire v. Cummings,* we held the trial court was required to explain that it considered lesser sanctions before imposing severe, "death penalty" sanctions. 134 S.W.3d at 842. In *Powell,* we held that the dismissal of plaintiff's case with prejudice for failing to appear for a deposition was an excessive sanction under Texas Rule of Civil Procedure 215. 811 S.W.2d at 918–19. Because we held that the death penalty sanction at issue was "manifestly unjust," we did not identify specific factors for determining appropriate sanctions. *Id.* at 917 n. 6, 919. In his concurrence, Justice Gonzalez recognized that the American Bar Association cumulated relevant factors useful to this type of analysis. *Id.* at 920–21 (Gonzalez, J., concurring).[5] Although we do not require a trial court to

---

4. The severity of sanctions is also limited by constitutional standards. TEX. CONST. art. I, § 13; *Pennington v. Singleton,* 606 S.W.2d 682, 690 (Tex.1980) (noting that the article I, section 13 of the Texas Constitution makes the excessiveness of a fine " 'a question for the court to decide under the facts of each particular case' " (quoting *State v. Galveston, H. & S.A. Ry. Co.,* 100 Tex. 153, 97 S.W. 71, 78 (1906), *rev'd on other grounds,* 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908)); *see also Flores v. Millennium Interests, Ltd.,* 185 S.W.3d 427, 436 (Tex.2005) (Wainwright, J.,

concurring). This issue was not raised in this appeal and is not addressed in this opinion.

5. The ABA's 1988 report was designed, in part, to help bring uniformity to the uneven application of sanctions under Federal Rule of Civil Procedure 11. AMERICAN BAR ASSOCIATION, STANDARDS AND GUIDELINES FOR PRACTICE UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, *reprinted in* 121 F.R.D. 101, 104 (1988). The factors are:

 a. the good faith or bad faith of the offender;

address all of the factors listed in the report to explain the basis of a monetary sanction under Chapter 10, it should consider relevant factors in assessing the amount of the sanction. In addition, the determination of the amount of a penalty to be assessed under Chapter 10, which is not limited to attorney's fees and costs, should nevertheless begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct. This provides a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burdens on the court system.

The trial court found that the claims brought against the doctors did not meet the evidentiary support requirement in Chapter 10. The trial court also concluded that the lawsuit was groundless, as defined in Texas Rule of Civil Procedure 13. The trial court's order stated that Henry "has consistently engaged in a similar pattern of conduct."

Dr. Low testified that he felt that Henry harassed him by filing the lawsuit. He testified that he lost a day and a half from the office because of the lawsuit but does not quantify this expense and identifies no other out-of-pocket expenses. Dr. Smith testified that he believed Henry felt "bad will toward [him] personally" because Henry filed a suit with no basis in fact against him. Two other physicians, Drs. Mastin and Canterbury, testified that Henry had named them in lawsuits in which they had never treated the plaintiff patients. Both testified about the impact of the lawsuits and intent to sue letters on their malpractice insurance rates: Dr. Mastin testified that his group's rates increased by 68% due in part to three groundless suits filed by Henry's clients; Dr. Canterbury also testified that her practice group faced increased insurance premiums due to groundless pleadings like Henry's.

Although we conclude that the trial court was within its discretion to award sanctions under Chapter 10, we cannot determine the basis of the $50,000 penalty on this record. Given the severity of the sanction, therefore, we remand this case in the interest of justice to allow the parties to present evidence responsive to our guidelines, if necessary, and to allow the trial court to consider the amount of the

b. the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

c. the knowledge, experience, and expertise of the offender;

d. any prior history of sanctionable conduct on the part of the offender;

e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h. the risk of chilling the specific type of litigation involved;

i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j. the impact of the sanction on the offended party, including the offended person's need for compensation;

k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

. . . .

n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought. . . .

*Id.* at 125–26 (*cited in Powell*, 811 S.W.2d at 920–21 (Gonzalez, J., concurring)). This nonexclusive list of factors is helpful in guiding the often intangible process of determining a penalty for sanctionable behavior.

**622**

penalty imposed in light of the guidelines in this opinion. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 314–15 (Tex.2006) (remanding because evidence of attorneys fees for entire case is some evidence of what amount of segregated fees would be).

### V. Conclusion

We recognize that in some cases, a party may not have evidence that proves each specific factual allegation at the time a lawsuit is filed. Certainly, the law does not require proof of a case without reasonable time for discovery. However, this does not excuse the filing of claims against parties when the attorney filing the lawsuit possesses information that a reasonable inquiry would have determined negated some of the claims made. We affirm the trial court's determination that chapter 10 was violated but hold that the trial court abused its discretion in not more specifically identifying the basis for imposing a $50,000 penalty under chapter 10 of the Texas Civil Practice and Remedies Code. We reverse the judgment of the court of appeals and remand the case to the trial court for proceedings consistent with this opinion.