**Opinion issued June 19, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00654-CV

_____

**DANIEL BREEDEN, Appellant**

**V.**

**IRENE BREEDEN, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-35173**

---

## MEMORANDUM OPINION

Daniel Breeden and Irene Breeden were divorced in March 2023 in a separate proceeding. In that divorce case, the trial court issued a final divorce decree and a family-violence protective order against Daniel. In June 2023, Daniel filed a new lawsuit in a separate court seeking a family-violence protective order against Irene.

In her answer, Irene requested sanctions against Daniel under Civil Practice and Remedies Code chapter 10 for filing a new lawsuit for the sole purpose of harassment, creating unnecessary delay, and needlessly increasing her attorney's fees and litigation costs. After a hearing, the trial court dismissed Daniel's application without prejudice and awarded $2,300 in sanctions to Irene for attorney's fees. In four issues on appeal, Daniel contends that the trial court erred by awarding sanctions without supporting evidence and without providing notice and an opportunity to respond. We affirm.

## Background

Daniel and Irene are the parents of a minor child, D.D.B. (Dylan).[1] The parties divorced in March 2023.

The 247th District Court of Harris County presided over the divorce proceeding. In February 2023, the court signed an agreed protective order protecting Irene and Dylan after finding that Daniel "has committed family violence" and "caused serious bodily injury to [Irene]." The court further found that the protective order was "for the safety and welfare and in the best interest of Irene Breeden and [Dylan] and [is] necessary for the prevention of family violence[.]" Among other things, the order prohibited Daniel from committing family violence against Irene

---

[1] We refer to the minor child by a pseudonym to protect his privacy, and we refer to the parties by their first names because they share the same last name.

and Dylan; taking any action intended to result in physical harm or reasonably threatening physical harm to Irene and Dylan; communicating with Irene or Dylan except through Irene's attorney; going near Dylan or Irene or their residence, Irene's place of work, and Dylan's school; and possessing a firearm. The order also required Daniel to complete a battering intervention and prevention program. The order was effective for two years.

In March 2023, the court signed a final decree of divorce. The decree appointed Irene as sole managing conservator and Daniel as possessory conservator of Dylan. Pursuant to the agreed protective order, the decree required that Daniel have supervised visitation with Dylan through a third-party supervision provider. The decree also contained a provision permanently enjoining Daniel from permitting Dylan to be in the presence of Maria Dolores Garcia-Merrill, who is Daniel's mother and Dylan's paternal grandmother.

In June 2023, Daniel filed the underlying application for protective order in the 280th District Court. The application named Irene as the respondent and sought protection for three children, including Dylan, and three adults, including Daniel and his mother.[2] In the application, Daniel alleged that Irene had committed family violence and was likely to commit family violence in the future. Daniel requested

---

[2] The two other children share Daniel's last name, and the application states that they are not Irene's biological children.

3

that the court enter a protective order prohibiting Irene from taking numerous actions similar to those that Daniel was prohibited from taking in the agreed protective order in the divorce case. For example, Daniel sought to prohibit Irene from committing family violence; communicating "in any manner" with Daniel and Dylan; going near Daniel and Dylan, their residence, Daniel's place of work, and Dylan's school; and possessing a handgun. Daniel also requested that the court establish or modify a schedule for Daniel's possession of Dylan and award him exclusive use of his wedding ring.

Daniel attached a declaration and an affidavit to his application. In the declaration, Daniel stated that in February 2023, "Irene submitted evidence admitting to striking [him]," and in 2021, "Irene displayed child abuse and neglect and recorded it on her cell phone." Daniel also stated that "on many occasions when [he] was driving and [Irene] was a passenger, she would initiate arguments and threaten to kill [them] both in a car accident." He stated that Dylan was present during these incidents. In the affidavit, Daniel made additional accusations against Irene, including that she hit him and his sister, she is a substance abuser and drug trafficker, and she cyber stalked him and hacked into his email and social media accounts. He also accused Irene of video recording Dylan nude and "permitting him to cry without offering him any comfort."

Irene filed an answer generally denying Daniel's allegations. She specifically denied engaging in conduct that constituted family violence, including physically harming or threatening Daniel, Dylan, or any other person listed in the application. She also specifically denied that good cause existed to prohibit her from communicating with Daniel or Dylan, and she denied engaging in conduct "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass [Daniel] and other members of [Daniel's] family and household."

In her answer, Irene also requested that the trial court award her sanctions under Civil Practice and Remedies Code chapter 10. She alleged that Daniel's application for protective order did not "specify any dates, times, places, etc." and that Daniel's allegations against her were false. She also alleged that collateral estoppel barred Daniel's claims because all his allegations of family violence occurred prior to entry of the final divorce decree in the divorce case, and thus his claims had been adjudicated in that prior proceeding. Irene further alleged that Daniel "has filed several improper 'pro se' motions to set aside, alter, etc., the parties' Final Decree of Divorce, including the filing of a 'grievance' against [Irene's] attorney of record, which was summarily dismissed by the Chief Disciplinary Counsel of the State Bar of Texas." Finally, Irene alleged that Daniel's protective order application was filed "for the sole purposes of harassing [Irene], creating an unnecessary delay, and a needless increase in the cost of attorney's fees

5

and litigation costs to [Irene]." Irene requested that the court award her sanctions, attorney's fees, and court costs.

The trial court held a hearing on Daniel's application for protective order. Daniel appeared pro se, and Irene appeared with her counsel.

At the beginning of the hearing, Irene's counsel raised her request for sanctions. The trial court decided to hear Daniel's protective order application first. Daniel called Irene as his first witness, but after he asked his first question, Irene's counsel objected based on res judicata and collateral estoppel. Counsel argued that Daniel and Irene were previously parties to a divorce proceeding, and thus Daniel already had an opportunity to raise all the claims asserted in his application for protective order, including any assault claims and claims concerning possession of and access to Dylan and division of the parties' marital property. The trial court admitted into evidence the final divorce decree and the agreed protective order issued in the divorce case, as well as Daniel's application for protective order. Daniel responded that he had evidence to support his claims, but he did not introduce this evidence.

The trial court initially ruled that Daniel's claims were barred because they should have been raised and adjudicated in the divorce case. The court stated that in the final divorce decree, Irene "was given sole custody and [Daniel was] given supervised visitation" of Dylan, and the agreed protective order in that case indicated

that Daniel was "the person who was unsafe with [Dylan]." The court also stated that contrary to the allegations in his application, Daniel lacked knowledge about Irene's future conduct because the agreed protective order prohibited him from being near her.

Irene's counsel then re-urged the request for sanctions. Counsel asserted that Daniel, acting pro se, had initiated the divorce case and specifically requested that the court appoint Irene as sole managing conservator and appoint him as possessory conservator of Dylan, which contradicted Daniel's allegations in this case that Irene had been abusing Dylan. Counsel also asserted that after Daniel agreed to the protective order in the divorce case, Daniel filed a motion to remove his signature from the order, a motion to file the judgment, and a motion to modify the order. Counsel further asserted that Daniel had filed an attorney grievance against him with the State Bar of Texas, and the grievance was dismissed. Irene's counsel did not introduce any evidence supporting these arguments.

Irene's counsel also contended that after Daniel failed to obtain relief in the divorce proceeding, he filed "a false application for a protective order" containing allegations that were inconsistent with the position he took in the divorce case. Counsel thus requested sanctions under Civil Practice and Remedies Code chapter 10 against Daniel for signing a pleading—the application for protective order—that was unsupported by good faith and credible evidence. Counsel further contended

7

that "there can be no other purpose for this litigation than [to] harass, annoy, or increase the cost of litigation[.]" Counsel requested $2,300 in sanctions for his fees in defending Irene against Daniel's allegations, and the trial court orally granted the request.

After a lunch recess, the trial court sua sponte reversed its prior ruling that Daniel's claims were precluded by his participation in the prior divorce action. The court told Daniel that he has no knowledge of "what [Irene is] doing in this house because [he has not] been around her since the protective order was signed." Nevertheless, the court told Daniel that it would hear his application for a protective order against Irene if he chose to proceed. The court asked Daniel whether he wanted to proceed with the hearing on his application, and he responded, "Well, it depends," implying that his decision depended on whether the court would reconsider the sanctions ruling. The court stated that it was "not taking those sanctions off" because Daniel "need[s] to stop filing all of these motions." The court also stated that it "was surprised that [Irene] only asked for $2300. I was looking somewhere around seven grand. That 2300 isn't nothing. He [Irene's counsel] did you a solid." The court then told Daniel that if he proceeded with the hearing, he may face additional sanctions for attorney's fees that Irene incurred during the hearing, and the court expressed doubt about Daniel's success on his application for protective order because he was complaining about Irene's conduct in 2021 and because he had not seen Dylan since

the agreed protective order issued in the divorce case. After the court gave Daniel several opportunities to be heard on his protective order application, Daniel eventually passed on the hearing.

The trial court subsequently signed an order dismissing Daniel's application for protective order without prejudice. The court then signed an order granting Irene's request for sanctions. In the order, the court found that Daniel "passed his application for protective order." The court further found that based on the evidence and the parties' arguments, sanctions were appropriate under Civil Practice and Remedies Code chapter 10. The order awarded Irene $2,300 for reasonable and necessary attorney's fees. This appeal followed.

## Sanctions

In four issues, Daniel contends that the trial court erred by awarding sanctions because the award was not supported by evidence and he was not provided notice or an opportunity to be heard.[3]

### A.    Standard of Review

We review a trial court's order imposing sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We may reverse the sanctions ruling only if the trial court acted without reference to any guiding rules and

---

[3]    The Court grants Daniel's Motion to Exceed Reply Brief Length. *See* TEX. R. APP. P. 9.4(i)(2)(C).

principles, such that its ruling was arbitrary and unreasonable. *Id.* "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). Rather, "a trial court abuses its discretion when its decision is contrary to the only permissible view of probative, properly-admitted evidence." *Id.*

## B. Governing Law

Civil Practice and Remedies Code section 10.001 provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE § 10.001. Under this section, "the signer of a pleading or motion certifies that *each* claim, *each* allegation, and *each* denial is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry." *Low*, 221 S.W.3d at 615.

A party may move for sanctions for conduct that violates section 10.001. TEX. CIV. PRAC. & REM. CODE § 10.002(a). "The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations." *Id.* § 10.003.

If the court determines that a person has signed a pleading or motion in violation of section 10.001, the court may impose a sanction on the person. *Id.* § 10.004(a). "The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* § 10.004(b). A sanction may include an order to pay the opposing party the amount of reasonable expenses incurred because of the filing of the pleading or motion, including reasonable attorney's fees. *Id.* § 10.004(c)(3). The trial court may also award a prevailing party reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown, the court may award the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the litigation. *Id.* § 10.002(c).

## C.     Evidence Supporting Sanctions Award

In his first three issues, Daniel contends that the trial court erred in awarding sanctions against him because: (1) the trial court relied on Irene's counsel's "oral interpretation of events" rather than supporting evidence; (2) the court believed Irene's counsel was "doing a solid" for Daniel by not requesting additional sanctions; and (3) the court based the sanctions award on an attorney grievance that Daniel filed against Irene's counsel. We construe these issues as arguing that no evidence supports the sanctions award, and we address these issues together.

In response, Irene argues that Daniel waived his first three issues because he did not preserve error under Rule of Appellate Procedure 33.1 by raising these complaints in the trial court and because he did not comply with the briefing requirements in Rule of Appellate Procedure 38.1.

We disagree with Irene that Daniel did not preserve error under Rule 33.1. That rule provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was timely made to the trial court and that the trial court ruled or refused to rule on the complaint. TEX. R. APP. P. 33.1(a). In a civil nonjury case such as this one, however, a complaint regarding the legal or factual sufficiency of the evidence may be made for the first time on appeal in the complaining party's brief. TEX. R. APP. P. 33.1(d). Although Irene correctly argues that Daniel did not raise any objections in the trial court concerning the first

12

three issues on appeal, we construe these issues as challenging the legal sufficiency of the evidence supporting the sanctions award. Therefore, under Rule 33.1(d), Daniel was not required to preserve error on his first three issues. *See id.*

We agree with Irene, however, that Daniel waived his first three issues due to inadequate briefing. Rule of Appellate Procedure 38.1 requires an appellant's brief to contain a statement of facts that is "supported by record references" and to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(g), (i). A party whose brief does not cite legal authority and the record waives the issue. *Perry v. Cam XV Tr.*, 579 S.W.3d 773, 779 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Gilbreath v. Horan*, 682 S.W.3d 454, 506 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (quoting *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.)). "Were we to do so, . . . we would be abandoning our role as neutral adjudicators and become an advocate for that party." *Id.* (quoting *Valadez*, 238 S.W.3d at 845).

Pro se litigants are held to the same standards as attorneys and must comply with all applicable and mandatory rules of pleading and procedure. *Morris v. Am. Home. Mortg. Servicing, Inc.*, 360 S.W.3d 32, 36 (Tex. App.—Houston [1st Dist.]

2011, no pet.); *accord In re S.V.*, 697 S.W.3d 659, 662 (Tex. 2024) (per curiam) ("Pro se litigants are not exempt from the rules of procedure.") (quotation omitted). "To apply a different set of rules to pro se litigants would be to give them an unfair advantage over litigants represented by counsel." *Morris*, 360 S.W.3d at 36.

Daniel's opening brief does not contain a single citation to the appellate record, and the brief does not cite any legal authority supporting the arguments in the first three issues.[4] *See* TEX. R. APP. P. 38.1(g), (i). Therefore, Daniel's opening brief does not comply with Rule 38.1.

For the first time in his reply brief, Daniel developed and properly briefed his arguments by citing the appellate record and legal authority. Nevertheless, an adequate reply brief does not cure an inadequate opening brief. *See Palma v. Harris Cnty. Appraisal Rev. Bd.*, No. 01-17-00705-CV, 2018 WL 3355052, at *2 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. denied) (mem. op.); *Bank of Am., N.A. v. Barth*, No. 13-08-00612-CV, 2013 WL 5676024, at *3 (Tex. App.—Corpus

---

[4]    In the "Standards of Review" section of his brief, Daniel cites Government Code section 81.072(g), which prohibits a person from suing a complainant or a witness in a disciplinary proceeding based on a communication made to the commission, grievance committee, or chief disciplinary committee. *See* TEX. GOV'T CODE § 81.072(g). Daniel does not, however, provide any analysis applying this provision to the facts of this case or identify any communication he made that is the basis of Irene's request for sanctions against him. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "clear and concise argument for the contentions made"); *Gilbreath v. Horan*, 682 S.W.3d 454, 506 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("The failure to provide a substantive and meaningful analysis applying the law to the facts waives a complaint on appeal.").

14

Christi–Edinburg Oct. 17, 2013, no pet.) (mem. op.) (holding that party who "cit[ed] to the record and authority for the first time in its reply brief" had waived issues due to inadequate briefing). We also note that Daniel's reply brief contained additional arguments not presented in his opening brief. Generally, however, "a party may not present arguments for the first time in its reply brief." *Palma*, 2018 WL 3355052, at \*2 (quoting *Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.)). We therefore conclude that Daniel waived his first three issues by failing to adequately brief them.

But even if Daniel had not waived his first three issues, we disagree with his arguments. In his first and third issues, Daniel argues that the trial court erred by awarding sanctions because the court relied on argument of counsel—including that Daniel had filed an attorney grievance against counsel—rather than supporting evidence. These arguments ignore other evidence before the trial court at the hearing, including the final divorce decree and the agreed protective order issued in the divorce case, as well as Daniel's application for protective order in this case. *See Villa*, 299 S.W.3d at 97 (stating that trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports decision).

At the hearing, the trial court admitted into evidence the parties' final decree of divorce, the protective order against Daniel issued in the divorce case, and Daniel's application for protective order against Irene in this case. Together, these

documents show that Daniel's application for protective order against Irene requested relief that was inconsistent with the final divorce decree and the protective order issued in the divorce case. For example, the divorce decree awarded custody of Dylan to Irene and set a schedule for Daniel to have supervised visitation with Dylan, but Daniel's application requested that the trial court prohibit Irene from communicating or attempting to communicate with Dylan "in any manner" and from going near him, his residence, or his school. Daniel also requested that the trial court "[e]stablish or modify a schedule for [Irene's] possession of [Dylan]." Moreover, the divorce decree divided the parties' possessions, but Daniel's application requested that the court award him exclusive use of his wedding ring.

Furthermore, Daniel's application for protective order also contradicted the agreed protective order issued in the divorce case. For example, in the agreed protective order, the court found that Daniel "has committed family violence" and "caused serious bodily injury to [Irene]," and thus the protective order was necessary "for the safety and welfare and in the best interest of Irene Breeden and [Dylan]." The protective order prohibited Daniel from committing family violence against Irene and Dylan; communicating in any manner with them except through Irene's attorney; going near Irene and Dylan, their residence, and their place of employment and school; and possessing a firearm or ammunition. The agreed protective order also required Daniel to complete a battering intervention and prevention program.

16

Daniel's application requested substantially similar relief against Irene: he requested that the court prohibit Irene from committing family violence; communicating with Daniel or Dylan "in any manner"; going near their residence, Daniel's place of work, and Dylan's school; and carrying a handgun. Daniel also requested that the trial court order Irene to complete a battering intervention and prevention program.

Daniel's application thus sought tit-for-tat relief against Irene in an attempt to prohibit her conduct similar to the prohibitions imposed upon him by the agreed protective order. Much of the relief he requested would impose inconsistent obligations on Irene, which perhaps explains why he filed the application in a separate court from the divorce proceeding. These documents—namely, the final divorce decree and the agreed protective order issued in the divorce case—constitute some evidence that Daniel's application was "presented for an[] improper purpose, including to harass or to cause . . . needless increase in the cost of litigation" for Irene. *See* TEX. CIV. PRAC. & REM. CODE § 10.001(1); *Villa*, 299 S.W.3d at 97.

Daniel is correct to the extent he argues that Irene did not introduce into evidence the petition for divorce and motions filed in the divorce case or the attorney grievance against her counsel.[5] Irene contended in part that sanctions were

---

[5] In the trial court, Daniel did not dispute that he had filed the petition for divorce, the challenged motions in the divorce proceeding, and an attorney grievance against Irene's counsel. On appeal, Daniel concedes that he filed these documents. Irene asserts that the trial court took judicial notice of statements in Daniel's petition for divorce, but the hearing transcript indicates that Irene only requested that the trial

17

appropriate because Daniel had filed the petition for divorce containing statements contrary to his allegations in his application for protective order. Irene also contended that Daniel filed motions in the divorce case and the attorney grievance as part of a pattern of harassment and needlessly increasing the cost of litigation, including Irene's attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE § 10.001(1). Although Irene did not present any evidence supporting these arguments, we already determined above that the final divorce decree and the agreed protective order issued in the divorce case constitute some evidence supporting the trial court's award of sanctions. *See Villa*, 299 S.W.3d at 97. Because some evidence supports the sanctions order, we conclude that the trial court did not abuse its discretion in awarding sanctions to Irene. *See id.*; *Low*, 221 S.W.3d at 614 (stating that trial court abuses its discretion by acting without reference to guiding rules and principles, such that ruling was arbitrary and unreasonable).

Daniel also argues that the trial court erred because it believed Irene's counsel was "doing a solid" for Daniel by not requesting additional sanctions. At the hearing, the trial court sua sponte reconsidered its initial ruling that Daniel's claims were barred by res judicata due to his participation in the prior divorce proceeding, and the court permitted Daniel to continue with the hearing on his application. The record

court take judicial notice of the final divorce decree and Daniel's application for protective order, both of which were admitted into evidence at the hearing.

18

indicates that Daniel perceived this ruling as the court's willingness to reconsider the sanctions award. When Daniel asked whether the trial court would reconsider the sanctions award as well, the court stated:

> No because you need to stop filing all of these motions. No. Listen, I was surprised that he only asked for $2300. I was looking somewhere around seven grand. That 2300 isn't nothing. He [Irene's counsel] did you a solid.

Daniel does not provide any analysis establishing how this comment constituted an abuse of discretion in awarding sanctions. Essentially, the trial court notified Daniel that additional sanctions could be warranted to deter repetition of his conduct. *See* TEX. CIV. PRAC. & REM. CODE § 10.004(b) ("The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated."). Nevertheless, Irene did not request—and the trial court did not impose—additional sanctions. Daniel has not established that the comment constituted an abuse of discretion.

In sum, we hold that Daniel waived his first three issues for failing to adequately brief them. But even if he did not waive these issues, Daniel has not established that the trial court abused its discretion by awarding sanctions. We overrule Daniel's first, second, and third issues.

**D.    Notice**

In his fourth issue, Daniel contends that the trial court erred by awarding sanctions because it did not provide him with notice and an opportunity to respond

19

to Irene's request. Irene responds that Daniel failed to preserve error on this issue under Rule of Appellate Procedure 33.1.[6]

Civil Practice and Remedies Code section 10.003 provides, "The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations." *Id.* § 10.003. However, to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). To preserve error for lack of notice of sanctions, a party must object to lack of adequate notice in the trial court, object to the hearing going forward, or move for a continuance. *Low*, 221 S.W.3d at 618.

At the hearing on the protective order and Irene's request for sanctions, Daniel did not object based on lack of notice concerning the sanctions request, object to the hearing going forward, or move for a continuance. *See id.* Therefore, he has not preserved this issue for appellate review.[7] *See id.*; TEX. R. APP. P. 33.1(a)(1)(A).

---

[6] Irene also responds that Daniel waived this issue by inadequately briefing it. *See* TEX. R. APP. P. 38.1(i). Because we conclude that Daniel waived this issue under Rule 33.1, we need not address this argument. *See* TEX. R. APP. P. 47.1.

[7] To the extent that Daniel argues in his reply brief that his due process rights were violated by lack of notice, he has also waived this issue. *See Low v. Henry*, 221 S.W.3d 609, 618–19 (Tex. 2007) (concluding that failure to object to lack of notice that appellee's conduct would be considered at hearing waives due process complaint based on lack of notice).

20

Even if Daniel had preserved this complaint for appellate review, we disagree that he was not provided adequate notice of the allegations and an opportunity to respond. Irene's answer expressly requested sanctions against Daniel under Civil Practice and Remedies Code chapter 10. Irene's answer alleged that Daniel's application for protective order contained false allegations and that the application was "collectively brought for the sole purposes of harassing [Irene], creating an unnecessary delay, and a needless increase in the cost of attorney's fees and litigation costs to [Irene]." The answer requested sanctions as well as attorney's fees and costs. These are the same arguments Irene raised at the hearing. Thus, Daniel had notice that Irene sought sanctions against him and notice of the allegations supporting the request. *See Low*, 221 S.W.3d at 618 (concluding that motion for sanctions provided sufficient notice of chapter 10 sanctions).

Furthermore, the trial court considered Irene's request for sanctions at a hearing attended by Daniel, who appeared pro se. Daniel does not argue that the trial court prohibited him from responding to the allegations, and the record shows that he was provided an opportunity to respond to Irene's request. Thus, Daniel had an opportunity to respond to the allegations against him. *See id.* ("Even if Henry had preserved his notice complaint, he had a reasonable opportunity to respond under section 10.003[.]") (citation omitted).

We overrule his fourth issue.

21

## Rule 45 Damages

On appeal, Irene requests that this Court award her damages under Rule of Appellate Procedure 45 because Daniel filed a "frivolous" appeal. She asserts that she was required to "incur more attorney's fees, costs of court, etc." by filing a responsive brief, and if she did not file an appellate brief, "it is likely this Court may have ruled in [Daniel's] favor, causing [Irene] even more delay, harassment, attorney's fees and costs." Daniel did not respond to this request in his reply brief.

Rule of Appellate Procedure 45 provides:

> If the court of appeals determines that an appeal is frivolous, it may— on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

TEX. R. APP. P. 45.

Irene does not cite any legal authority other than Rule 45 itself to support her request for damages. And except for the quoted language above from her brief, Irene does not provide any analysis establishing that Daniel's appeal is frivolous or what amount of damages constitutes "just damages" in this case. *See id.* (authorizing just damages for filing frivolous appeal); *see also* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to contain clear and concise argument for contentions made), 38.2(a)(1) (requiring appellee's brief to conform to requirements of Rule 38.1 for appellant's brief with exceptions not applicable here). To the contrary, she asserts

22

that "it is likely this Court may have ruled in [Daniel's] favor" if she did not file a responsive appellate brief. Although we ultimately determined that Daniel's issues lacked merit, Irene has not established that the appeal was frivolous or that she is entitled to damages under Rule 45. *See Mailhot v. Mailhot*, 124 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (declining to conclude that meritless appeal was frivolous under Rule 45). We deny Irene's request for damages.

## Conclusion

We affirm the trial court's order awarding sanctions. We deny Irene's request for damages under Rule of Appellate Procedure 45.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.