In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00041-CV


____________________



VICTORIA HALL, HOLLI ROFFEY, JOHN C. OSBORNE, AND


THE LAW OFFICES OF JOHN C. OSBORNE, P.L.L.C., Appellants



V.



ROXANE GUEST AND LESLIE WELDY, Appellees






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 07-01-00732 CV






 MEMORANDUM OPINION


 This is an appeal from an order awarding monetary sanctions. We affirm.

I. Background


 Victoria Hall and Holli Roffey filed this lawsuit after the North Country Women's
Tennis League ("NCWTL" or "League") suspended them for their conduct during a doubles
match. Hall and Roffey forfeited the match to the opposing team, Roxane Guest (1) and Leslie
Weldy. After the match ended, Hall and Roffey "were upset and hit a couple of tennis balls
into the fence around the court." Peggy Payne and Kay Rice, the supervisors of the Guest-Weldy team, filed charges with the NCWTL and accused Hall and Roffey of intentionally
trying to hit Guest and Weldy with the tennis balls. After the League concluded its
investigation, it suspended Hall and Roffey for eight months, and placed Guest on probation
for her role in the events that occurred prior to Hall and Roffey's decision to forfeit the
match.

 Subsequently, Hall and Roffey sued Guest, Weldy, Payne, and Rice for defamation
per se. Hall and Roffey asserted that the defendants had falsely accused them of
"unsportsmanlike conduct," and lodged "disparaging and untrue accusations with the
NCWTL." Approximately two and one-half months after they filed suit, Hall and Roffey
dismissed their claims against Payne and Rice.

 Guest counterclaimed, seeking to have Hall and Roffey sanctioned. Guest alleged that
Hall's and Roffey's claims were "baseless, without merit, and brought likely for the purpose
of harassing Guest." Several months later, Guest filed traditional and no-evidence motions
for summary judgment. In her no-evidence motion for summary judgment, Guest asserted
that the statements attributed to her could not constitute slander per se and that Hall and
Roffey could not prove the elements of a claim of defamation per se. Hall and Roffey filed
no response to Guest's motions for summary judgment, which were to be heard on November
8, 2007. On the day before the hearing, Hall and Roffey nonsuited their claims against Guest
and Weldy.

 On November 13, 2007, Guest notified Hall and Roffey's attorney that the trial court
would hear her "Counterclaim/Motion for Sanction" on November 20. On November 15,
Guest filed a brief in support of her request for sanctions, and, for the first time, included a
specific request that the court include an award of sanctions against Hall and Roffey's
attorney. Hall and Roffey filed a response opposing Guest's request for sanctions; they
asserted that the counterclaim was not a motion, and objected that they received insufficient
notice. Hall and Roffey's response also alleged that Guest had signed a release that waived
her claims for sanctions, and that their voluntary nonsuit prevented the trial court from
considering the sanctions request.

 During the sanctions hearing, the trial court found that the counterclaim included a
motion for sanctions and that Guest's request for sanctions had survived Hall and Roffey's
nonsuit. The court ruled that the release did not prevent Guest from seeking sanctions. The
trial court awarded monetary sanctions against Hall, Roffey, their attorney who filed the
original petition, and the attorney's law firm with the purpose of reimbursing Guest for fees
she incurred in defending the suit.

II. Appellate Issues


 Hall, Roffey, their attorney, and his law office (collectively, the "sanctioned parties")
raise five issues on appeal. Issue one contends that the trial court never acquired jurisdiction
over Guest's sanctions claim against the lawyer and his law offices because the counterclaim
did not seek such sanctions. Issue two asserts that the trial court never acquired jurisdiction
over Guest's claim for sanctions against the attorney or his law office because there were no
pending motions for sanctions naming them when Hall and Roffey dismissed their suit. Issue
three argues that there was no evidence that the lawsuit was filed for "dishonest,
discriminatory, or malicious purposes." Issue four argues that Guest did not present evidence
to show that Hall's and Roffey's claims were "filed for purposes of harassment, delay, or to
increase the costs of litigation." Issue five contends that Guest released or waived her
sanctions claim.

III. Trial Court's Jurisdiction


 In their first two issues, the sanctioned parties challenge the trial court's jurisdiction
to adjudicate the sanctions issue. We find no error in the trial court's treatment of the
counterclaim as a motion for sanctions and find no error in the trial court's exercise of
jurisdiction over the attorney and his law offices. 

 When determining the nature of a document, courts look to the substance of the relief
requested by the pleading and not merely the title given the document. Tex. R. Civ. P. 71
("When a party has mistakenly designated any plea or pleading, the court, if justice so
requires, shall treat the plea or pleading as if it had been properly designated."); see State Bar
of Tex. v. Heard, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for
relief to determine the nature of the pleading, not merely at the form of title given to it."). 

 In our opinion, Guest's counterclaim clearly sought to invoke the trial court's
authority to enter sanctions. The counterclaim specifically requested an award of reasonable
attorney's fees under Chapter 10 of the Texas Civil Practice and Remedies Code and under
Rule 13 of the Texas Rules of Civil Procedure, and alleged that the lawsuit was frivolous,
groundless, brought in bad faith, and brought for the purpose of harassment. Rule 13 and
Chapter 10 both authorize a trial court to impose sanctions. We find no error in the trial
court's treatment of Guest's counterclaim as a motion for sanctions. 

 The sanctioned parties also assert that the trial court did not have jurisdiction to
impose sanctions on their attorney because Guest's counterclaim did not specifically ask for
sanctions against the attorney or his law offices. The sanctioned parties argue that Guest's
assertion of her sanctions request against Hall and Roffey's attorney in a brief supporting her
sanctions motion was insufficient to vest the trial court with jurisdiction to adjudicate the
issue against the attorney.

 Both Rule 13 and Chapter 10, the bases for Guest's sanction request, allow the trial
court to impose sanctions on the parties, or to impose them on the attorney who signed the
offending pleading. See Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a) (Vernon 2002) ("A
court that determines that a person has signed a pleading or motion in violation of Section
10.001 may impose a sanction on the person, a party represented by the person, or both.");
Tex. R. Civ. P. 13 ("If a pleading, motion or other paper is signed in violation of this rule,
the court, upon motion or upon its own initiative, after notice and hearing, shall impose an
appropriate sanctions available under Rule 215, upon the person who signed it, a represented
party, or both.") (footnote omitted). We conclude that by the express terms of Rule 13 and
Chapter 10, the trial court possessed jurisdiction over both the parties and their attorneys to
decide the sanctions motion.

 The sanctioned parties also contend that the trial court could not address motions for
sanctions that were filed after their notice of nonsuit. However, Guest's request for sanctions
against Hall and Roffey was filed prior to the nonsuit, and it gave the trial court jurisdiction
to sanction the attorneys who signed the offending pleadings. See Tex. Civ. Prac. & Rem.
Code Ann. §10.004(a); Tex. R. Civ. P. 13. With respect to the effect of a nonsuit, Rule 162
of the Texas Rules of Civil Procedure specifically provides that a dismissal by nonsuit "shall
have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time
of dismissal, as determined by the court." Guest's request for sanctions was a pending claim
when Hall and Roffey decided to nonsuit their claims; therefore, Rule 162 protected Guest's
request for sanctions from their nonsuit. 

 Even had Rule 162 not insulated Guest's sanctions claim from the effect of the
nonsuit, a trial court has the continuing authority to decide a motion for sanctions relating to
pre-judgment conduct during the period it possesses plenary jurisdiction following a nonsuit. 
See Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596 (Tex. 1996) ("Thus, the
time during which the trial court has authority to impose sanctions on such a motion is
limited to when it retains plenary jurisdiction and is not limited by Rule 162."). Further, "the
signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point
for determining when a trial court's plenary power expires." In re Bennett, 960 S.W.2d 35,
38 (Tex. 1997); see Davidoff v. GX Tech. Corp., 134 S.W.3d 514, 515 (Tex. App.-Waco
2004, pet. denied). In this case, the judge signed the order on Hall and Roffey's motion for
nonsuit on November 16, 2007, and signed the sanctions order on December 4, 2007. Hall
and Roffey filed a motion for new trial on December 14, 2007, and the trial court denied the
motion on December 19, 2007. The trial court's plenary power, however, existed for thirty
days after it denied the motion, a date well past the date the trial court signed the sanctions
order on December 4, 2007. See Tex. R. Civ. P. 329b(d), (e). "A trial court's power to
decide a motion for sanctions pertaining to matters occurring before judgment is no different
than its power to decide any other motion during its plenary jurisdiction." Schexnider, 940
S.W.2d at 596. 

 We conclude that the trial court had jurisdiction to act on Guest's pending request for
sanctions at the time it entered the order. We overrule issues one and two. 

IV. Abuse of Discretion 


 An appellate court reviews the imposition of sanctions by the trial court for abuse of
discretion. Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007). We may reverse the trial court's
ruling only if the court "acted without reference to any guiding rules and principles, such that
its ruling was arbitrary or unreasonable." Id. Courts generally presume that the parties filed
pleadings or other papers in good faith, and the party asking for sanctions has the burden to
overcome the good-faith presumption. Id.

 In issues three and four, the sanctioned parties argue there was no evidence to establish
sanctions under Chapter 10 or Rule 13. Both allow the trial court to impose sanctions on an
attorney or a party for filing pleadings or motions that have no reasonable basis in law or fact. 
See Tex. Civ. Prac. & Rem. Code Ann. § 10.001(1)-(4) (Vernon 2002) (2); Tex. R. Civ. P. 13;
Low, 221 S.W.3d at 614. Under Section 10.001, "the signer of a pleading or motion certifies
that each claim, each allegation, and each denial is based on the signatory's best knowledge,
information, and belief, formed after reasonable inquiry." Low, 221 S.W.3d at 615 (emphasis
in original). "The fact that an allegation or claim is alleged against several defendants-so-called 'group pleadings'-does not relieve the party from meeting the express requirements of
Chapter 10. Each claim against each defendant must satisfy Chapter 10." Id. Under the
Rules of Civil Procedure, Rule 13 provides that a signature on pleadings or other legal
documents constitutes the signer's certification that to the best of his "knowledge,
information, and belief formed after reasonable inquiry the instrument is not groundless and
brought in bad faith or groundless and brought for the purpose of harassment."

 At the sanctions hearing, five witnesses testified, but Guest was the only one who 
testified about the circumstances leading to the charges of unsportsmanlike behavior against
Hall and Roffey. Guest testified that she did not file the complaint against them and stated
that she never made any statements to the League prior to the time that it sanctioned Hall and
Roffey for their conduct. She also testified that she never made any false statements about
Hall and Roffey to anyone. During the hearing, Hall and Roffey called no witnesses to
dispute Guest's testimony. 

 Prior to the hearing, Hall and Roffey filed a response to the motion for sanctions that
included their attorney's affidavit as an exhibit. According to the affidavit, Hall and Roffey
told their attorney that Roffey "hit a couple of tennis balls into the fence surrounding the
tennis court" after the match ended. Then, "Guest and Weldy took umbrage, and falsely
accused [Hall and Roffey] of intentionally trying to hit them after the match." The attorney's
affidavit further states that he did not file the lawsuit to harass Guest, in bad faith, or for any
improper purpose. The balance of the attorney's affidavit explains why he did not consider
the release signed by his clients Hall and Roffey as sufficiently broad to apply to off-court
conduct or verbal exchanges that occurred after a match ended.

Reasonable Inquiry


 In its sanctions order, the trial court concluded that the sanctioned parties did not make
a reasonable inquiry. The court found that

 Guest did not have any communication with the Board of the NCWTL prior to
the time that disciplinary action was taken by the Board against Plaintiffs and
Guest. Thus, Guest could not have made any false or defamatory statements to
the Board. If Plaintiffs and Plaintiffs' Counsel had investigated their claims by
simply responding to or communicating with [Guest's attorneys], they would
have learned this information and this lawsuit could have been entirely avoided. 


According to the trial court, Hall, Roffey, and their attorney each failed to make the required
reasonable inquiry. The trial court's sanctions order states that Hall, Roffey, and their
attorney "did not conduct any investigation into the facts alleged by them before asserting
them in pleadings filed with the Court."

 This case is similar to Low. See 221 S.W.3d at 617. The Low appellants, who were
physicians, presented undisputed evidence to the trial court that they did not prescribe or
administer medication as alleged in the plaintiff's petition and that a pre-suit review of the
plaintiff's medical records would have confirmed that fact. Id. In concluding that the trial
court did not abuse its discretion in imposing sanctions, the Low Court explained that the
physicians were not required to specifically show that counsel had acted in bad faith or with
malicious intent. Id. Instead, they had to show that the attorney certified that all the
allegations in the petition had evidentiary support, or were likely to have such support, when,
in fact, they did not. Id. 

 Guest's testimony at the sanctions hearing was evidence that she did not make any 
statements about Hall and Roffey to the NCWTL. No witnesses at the hearing made any
contrary contentions. The only evidence concerning the sanctioned parties' inquiry consisted
of their attorney's affidavit, which was attached to their supplemental response to the motion
for sanctions. The affidavit does not contend that Guest made statements to the NCWTL.
Rather, the affidavit states that Payne and Rice, who were nonsuited, filed the charges with
the NCWTL. Although the attorney's affidavit reflects that he interviewed his clients and
reviewed various e-mails sent to and from the NCWTL, there is nothing in the attorney's
affidavit that proves he had evidence from any source that Guest published any statements
about Hall and Roffey that were actionable under a theory of defamation per se. Further, there
is no evidence of any investigation made by Hall or Roffey.

 Both Chapter 10 and Rule 13 require that a reasonable inquiry be made. The evidence
in the record supports the trial court's conclusion that the sanctioned parties failed to make
reasonable inquiry. 

Defamation Per Se


 In its sanctions order, the trial court also found: 

 Plaintiffs sued Guest for Defamation Per Se, which could only be supported by
evidence that Guest made false statements causing Plaintiffs injury to their
business reputation, imputing to them a crime, disease or sexual misconduct. 
Plaintiffs failed to make any allegation of such injury much less provide
evidentiary support of this claim.


According to the plaintiffs' pleadings, the alleged defamation per se occurred when,
"[s]ubsequent to the match, the Defendants lodged false charges against the Plaintiffs,
accusing them of trying to 'intentionally' hit them with tennis balls after the match was over." 
 Statements constituting defamation per se are actionable without proof of injury. Tex.
Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 580 (Tex.
App.-Austin 2007, pet. denied); see Bentley v. Bunton, 94 S.W.3d 561, 605 (Tex. 2002). As
the Austin Court of Appeals explained, "A false statement will typically be classified as
defamatory per se if it injures a person in his office, profession, or occupation; charges a
person with the commission of a crime; imputes sexual misconduct; or accuses one of having
a loathsome disease." Tex. Disposal Sys. Landfill, 219 S.W.3d at 581 (citations omitted).

 The alleged statement in this case asserted that Hall and Roffey intentionally tried to
hit Guest and Weldy with tennis balls after the match ended. In the context that the statement
is alleged to have occurred, the statement, at most, accused Hall and Roffey of
unsportsmanlike conduct. Even presuming, for purposes of the appeal, that the alleged
statement was published, it does not fit into the categories of statements identified as
constituting defamation per se. See id. We agree with the trial court that "[p]laintiffs failed
to make any allegation of such injury [i.e., injury to their business reputation, imputing to
them a crime, disease or sexual misconduct] much less provide evidentiary support of this
claim."

Harassment


 The record also contains evidence that supports the trial court's conclusion that the suit
was filed for malicious purposes and for purposes of harassment. During the sanctions
hearing, Guest testified, without objection, that the suit was filed for purposes of harassment. 
Further, the trial court properly considered the entire history of the case before it, which
included Hall's and Roffey's failures to answer interrogatories and their dismissal of their
claims shortly before the date of the summary judgment hearing. See Falk & Mayfield L.L.P.
v. Molzan, 974 S.W.2d 821, 825-26 (Tex. App.-Houston [14th Dist.] 1998, pet. denied)
(stating that a trial court considering whether to sanction a party or attorney is entitled to
consider the history of the case). Guest's testimony about the motivations that led to the suit,
the absence of any facts that were brought out during the sanctions hearing justifying a claim
of defamation per se, and the history of the case are sufficient to support the trial court's
finding that the suit was filed for "an improper purpose including to harass, embarrass, and
cause needless and unnecessary expense to Guest."

 Therefore, based on the record before it, the trial court did not abuse its discretion in
imposing sanctions against appellants. Issues three and four are overruled. 



V. Release of Sanctions Claim


 In issue five, appellants argue that Guest released her sanctions claims when she signed
a liability release that allowed her to participate in the tennis league. The release (3) states: 

 I hereby request entry into North Country Women's Tennis
League [hereinafter NCWTL] and request permission to
participate in activities at the tennis courts of the Clubs
participating in NCWTL. Acceptance of my entry in any activity
of NCWTL is without assumption of responsibility of any kind
by NCWTL, its members, officers, directors, or agents, or by
clubs, or court owners which allow use of their courts for
NCWTL activities, their members, officers, directors, or agents.


 In consideration of the acceptance of my entry into NCWTL, I do
hereby and on behalf of myself and my heirs and legal
representatives release and forever discharge the NCWTL, its
members, officers, directors, agents or participating clubs of and
from any and all claims and demands of every kind, nature, and
character which I may have or may hereafter acquire for any
damages, losses or injuries which may be suffered or sustained
by me.


 I understand that I alone am responsible for determining the
safety, condition, and playability of any tennis court upon which
I will participate in a NCWTL activity before I use any such
court. I understand that I have the right and responsibility to
refuse to participate in any activity on such court if I am
uncertain whether the court is safe for my use. Having
personally determined a court is safe and satisfactory for my use,
I alone am responsible for refusing to continue any activity on
such court if I believe the condition of the court has changed
during my use.

 

 The issue before us is whether claims arising from the use of the Texas court system
are within the subject matter of Guest's release. The plain language of Guest's release
contemplates the release of claims arising from the use of tennis courts. The sanctions claims
at issue here arose from litigation. "[C]laims not clearly within the subject matter of the
release are not discharged." Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex.
1991). Considering the subject matter of the release as a whole, and in light of the release's
contemplation of claims arising from activities on tennis courts rather than those arising from
the use of the legal system, we conclude that Guest's claims for sanctions were not mentioned
and are not clearly within the subject matter of Guest's release. 

 We hold that the release is not sufficiently broad to include Guest's claims for
sanctions and overrule issue five. Having overruled all of the appellants' issues, we affirm
the trial court's order.

 AFFIRMED.

 _____________________________

 HOLLIS HORTON

 Justice


Submitted on November 11, 2008

Opinion Delivered February 5, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. In their pleadings, the plaintiffs' incorrectly spelled Guest's first name as "Roxanne."
We use the correct spelling, "Roxane." 
2. Chapter 10 provides that by signing a pleading or motion, an attorney certifies that,
based on his "best knowledge, information, and belief, formed after reasonable inquiry[,]"
the pleading or motion:



 is not being presented for any improper purpose, such as harassment,
unnecessary delays, or needless increased litigation costs;

 contains only those claims, defenses, or legal contentions that are either
warranted by existing law or by nonfrivolous arguments for extensions or
changes to existing law; 

 contains only those allegations or contentions that are warranted by the
evidence or likely will be after a reasonable opportunity for further
investigation or discovery; and 

 contains only those denials that either are warranted by the evidence or based
reasonably on a lack of information or belief. 



Tex. Civ. Prac. & Rem. Code Ann. § 10.001(1)-(4) (Vernon 2002 ). 
3. This is the same release form that Roffey signed, and is similar, but not entirely
identical, to the one signed by Hall.