Opinion issued March 31, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-24-00207-CV

———————————————

## DR. ROBERT CORWIN, RICHARD B. BRUALDI, AND THE BRUALDI LAW FIRM, P.C., Appellants

## V.

## EXXON MOBIL CORPORATION, Appellee

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2024-02900

## MEMORANDUM OPINION

Appellants Dr. Robert Corwin, Richard B. Brualdi, and The Brualdi Law Firm, P.C. challenge the trial court's order imposing sanctions against Mr. Brualdi and The Brualdi Law Firm (collectively, "Brualdi") and awarding $69,861.19 in attorney's fees to appellee Exxon Mobil Corporation ("Exxon Mobil"). On appeal,

appellants contend that the trial court abused its discretion by sanctioning Brualdi because (1) neither Mr. Brualdi nor his law firm signed the petition and motion for temporary injunction, and thus Exxon Mobil failed to satisfy the precondition to be entitled to a sanction under Chapter 10 of the Texas Civil Practice and Remedies Code or Texas Rule of Civil Procedure 13, (2) the trial court could not circumvent Chapter 10 and Rule 13 and sanction Brualdi under its inherent power, and (3) the motion for temporary injunction was neither groundless nor filed in bad faith. If this Court reverses the sanction, appellants request that the Court vacate the trial court's findings of fact and conclusions of law. We affirm.

## Background

On October 11, 2023, Exxon Mobil announced a merger with Pioneer Natural Resources, an oil and gas exploration and production company, valued at $59.5 million. Pioneer's shareholders were scheduled to vote on the proposed merger at a special meeting on February 7, 2024.

### A.    Procedural History

On January 17, 2024, Dr. Robert Corwin, a Pioneer shareholder, sued to enjoin the closing of the vote on the merger.[1] Dr. Corwin asserted causes of action

---

[1] In his original petition for injunctive relief, Dr. Corwin named Pioneer, Exxon Mobil, and several Pioneer directors as defendants. Pioneer and the individually named defendants are not parties to this appeal.

against Exxon Mobil for violations of the Texas Securities Act ("TSA")[2] and negligent misrepresentation. Brualdi represented Dr. Corwin in the litigation.

Dr. Corwin subsequently sought an emergency temporary injunction against the closing of the shareholder vote on the merger.[3] The motion was set for hearing on February 2, 2024, five days before the scheduled shareholder vote. Exxon filed its opposition to the motion. Following the hearing, the trial court denied the request for injunctive relief.

Ten days later, Dr. Corwin filed a notice of non-suit of his claims without prejudice against all the defendants. The trial court entered an order dismissing Dr. Corwin's claims the same day.

## B.     Motion for Sanctions

Exxon Mobil moved for sanctions against Brualdi. It asserted that the trial court had the power to sanction Brualdi under Chapter 10 of the Texas Civil Practice and Remedies Code, Texas Rule of Civil Procedure 13 and, alternatively, its inherent authority because Brualdi's request for a temporary injunction was groundless and filed in bad faith and for an improper purpose.

The trial court held an evidentiary hearing on Exxon Mobil's motion for sanctions on March 8, 2024.

---

[2]      *See* TEX. GOV'T CODE ANN. §§ 4001.001–4008.105.

[3]      Brualdi did not seek a temporary restraining order in the case.

At the hearing, Exxon Mobil's counsel testified that "merger tax lawsuits,"[4] like the one filed in this case, place a defendant "between a rock and a hard place . . . . You either settle and pay the mandatory attorney's fees or you take a risk, however small, of an injunction and all the consequences that come with that." Exxon Mobil's counsel testified that Brualdi did not need to make a settlement demand in this case because counsel knew the terms of any settlement based on his personal experience handling litigation in numerous shareholder suits filed by Brualdi. He testified that Mr. Brualdi's "rate to settle these cases" is "$425,000."

When the trial court asked Mr. Brualdi whether $425,000 "sound[ed] right," the following exchange took place:

> [Mr. Brualdi]: It's possible there could be cases that have settled in that range, Your Honor.

---

[4] One court has described merger tax litigation in this way:

> It is no secret that when a public company announces a merger, lawsuits follow. . . . However, the ubiquity and multiplicity of merger lawsuits, colloquially known as a "merger tax," has caused many to view such lawsuits with a certain degree of skepticism. The lawsuits are filed only a relatively short time before the shareholder vote, and all it takes is a remote threat of injunction or delay to rationally incentivize settlement, even if defendants firmly and rightfully believe the lawsuit has no merit and would be disposed on a motion to dismiss or at the summary judgment stage. Most commonly, the lawsuits are brought on behalf of the company being acquired, and the claim is that the shareholders are not being bought-out at a high enough price.

> *City Trading Fund v Nye*, 9 N.Y.S.3d 592, at *13 (N.Y. Sup. Ct. 2015), *rev'd on other grounds,* 43 N.Y.S.3d 21 (N.Y. App. Div. 1st Dept. 2016).

[The Court]: Well, you are saying that's a general starting point for you and your firm, right?

[Mr. Brualdi]: I'm not sure I would characterize it that way, but it's certainly a number that has been mentioned. I think that's fair.

[Exxon Mobil's Counsel]: I wouldn't characterize it that way either, Your Honor, because it's not a starting point. It's a non-negotiable number.

[The Court]: Okay.

[Mr. Brualdi]: Different people would disagree about that. Again, it doesn't have anything to do –

[The Court]: It is my job to judge the credibility as well. You can dance around this issue. The more you dance around the issue, the less credible I find you; and that goes to any fact findings that I would do.

In support of its request for sanctions, Exxon Mobil introduced into evidence Exhibit 1, a list of more than seventy stockholder lawsuits filed by Brualdi, seeking to block a corporate merger, the majority of which were voluntarily dismissed. The list reflects that Brualdi filed two other shareholder lawsuits in Harris County.[5] It shows that Dr. Corwin was the named plaintiff in two other stockholder lawsuits filed by Brualdi in New York. The list also includes stockholder lawsuits that Brualdi filed on behalf of other plaintiffs, several of whom filed multiple lawsuits

---

[5] The lawsuits are *Zalvin v. Ben M. "Bud" Brigham, et al.*, Cause No. 2022-78029, in the 11th District Court, Harris County, Texas and *Inspired Investors v. Joe Bob Perkins, et al*, Cause No. 2015-04961, in the 157th District Court, Harris County, Texas. At the sanctions hearing, the trial court noted that the plaintiffs in both Harris County suits had sought a temporary injunction prior to the shareholder vote. In both cases, the temporary injunction motions were denied.

in numerous jurisdictions. Exxon Mobil also introduced into evidence Exhibit 4, an affidavit from Exxon Mobil's counsel describing Brualdi's business model in extensive detail. The trial court admitted the exhibits into evidence and limited the testimony in Exhibit 4 to the nineteen cases about which counsel had personal knowledge regarding his dealings with Mr. Brualdi.

With regard to the list of shareholder lawsuits, Mr. Brualdi argued that the trial court could not find that he had filed the motion for temporary injunction in bad faith based on Exxon Mobil counsel's purported "knowledge of how something works and how things are done." He argued that the trial court "would have to find there was bad faith in this case, not some other case in some other court by some other plaintiff." The trial court noted that it could consider the list of shareholder lawsuits as evidence of a pattern.

In addition to counsel's testimony and the list of other stockholder suits filed by Brualdi, Exxon Mobil's counsel directed the trial court to two opinions in which courts had criticized Mr. Brualdi and his firm. *See In re SS & C Techs., Inc. S'holders Litig.*, 948 A.2d 1140 (Del. Ch. 2008);[6] *City Trading Fund v. Nye*, 9

---

[6] In *SS & C Technologies*, the Delaware Court of Chancery imposed sanctions in a merger lawsuit filed by The Brualdi Law Firm. *See In re SS & C Techs., Inc. S'holders Litig.*, 948 A.2d 1140, 1145 (Del. Ch. 2008). After the court rejected the settlement, defendants discovered that one of the plaintiffs "manage[d] a web of small investment partnerships for the sole purpose of bringing stockholder lawsuits primarily through his attorney in this action, Richard B. Brualdi." *Id.* at 1144. The court imposed sanctions based on a pattern of unethical conduct,

N.Y.S.3d 592 (N.Y. Sup. Ct. 2015), *rev'd on other grounds,* 43 N.Y.S.3d 21 (N.Y. App. Div. 1st Dept. 2016).[7]

The trial court granted Exxon Mobil's motion. It found that the evidence support[ed] a sanctions award of $59,861.19 in attorney's fees for Exxon Mobil incurred in both defending against the sanctionable conduct and in seeking (and defending on appeal) a sanctions award, and $10,000.00 to the Harris County Treasurer."[8]

In its findings of fact and conclusions of law, the trial court found that Brualdi's request for a temporary injunction was groundless as "each of Plaintiff's

---

including making false statements to the court, which were compounded by further false statements made to hide the original inaccuracies. *See id.*

[7]    In *Nye*, a New York court noted that merger tax lawsuits are "the modus operandi of Bass and the Brualdi Law Firm. They purchase nominal amounts of shares in publicly traded companies. Then when one of the companies announces a merger, the partnership engages the Brualdi law firm to file a merger tax lawsuit." *City Trading Fund v. Nye*, 9 N.Y.S.3d 592, at *8 (N.Y. Sup. Ct. 2015), *rev'd on other grounds,* 43 N.Y.S.3d 21 (N.Y. App. Div. 1st Dept. 2016). The court found that The Brualdi Law Firm "adopt[s] inequitable litigation tactics and . . . advance[s] meritless claims directed not at vindicating the rights of real shareholders but at maximizing the chance Brualdi Brand litigation will settle, resulting in awards of attorneys' fees that are wholly out of proportion to any real benefit conferred on shareholders." *Id.* at *9.

The *Nye* court further noted that "[t]he Brualdi Law Firm's recent wave of litigation in this court appears to be a continuation of a business strategy it previously carried out in the Delaware Court of Chancery, which went awry." *Id.*

[8]    The order further provided for conditional appellate fees of $40,000 through the court of appeals, $40,000 if the appeal is decided following a petition for review and a response at the Texas Supreme Court, $40,000 if the appeal is decided following merits briefing, and $20,000 if there is oral argument.

claims suffered from basic, fundamental defects that any attorney acting in good faith would have recognized before signing a petition, let alone a temporary injunction motion." The court found that "[p]laintiff did not have any viable causes of action against Exxon Mobil" and "could not show any probable, imminent or irreparable harm." The trial court further found that Brualdi's request for a temporary injunction was filed in bad faith and for an improper purpose in that it was filed "solely for the purpose of trying to obtain a settlement from [Exxon Mobil]" which "is precisely the type of conscious doing of a wrong for dishonest, discriminatory, or malicious purpose that sanctions exist to deter." The court determined that sanctions were appropriate under both Chapter 10 and Rule 13. Additionally, the court concluded that "[t]o the extent that sanctions are not appropriate under Chapter 10 or Rule 13 due to some technicality, the Court concludes that sanctions are appropriate under this Court's inherent authority."

This appeal followed.

**Standard of Review**

We review a trial court's order on a motion for sanctions for an abuse of discretion. *See Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). A sanctions award will not withstand appellate scrutiny if the trial court acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable. *Nath v. Texas Children's Hosp*., 446 S.W.3d

8

355, 361 (Tex. 2014). But we will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (noting appellate courts must "defer to the trial court's factual determinations if they are supported by evidence"). In an evidentiary hearing on sanctions, the trial court as fact finder is the sole judge of the credibility of the witnesses. *Barnes v. Lancashire*, No. 05-23-00791-CV, 2025 WL 3111828, at *3 (Tex. App.—Dallas Nov. 6, 2025, no pet.) (mem. op.).

## Applicable Law

"Various rules and statutes imbue courts with authority to sanction attorneys for professional lapses of one kind or another with or without bad faith." *Brewer*, 601 S.W.3d at 717–18. Two of those sources of authority are Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Rules of Civil Procedure.

Chapter 10 provides that "[t]he signing of a pleading or motion" certifies that "the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. If a court determines a person has signed a pleading that violates Chapter 10, it may impose a sanction on the person, a party represented by the person, or both. *See id.* § 10.004(a).

9

Rule 13 of the Rules of Civil Procedure provides that a person who signs a pleading or motion certifies that the pleading or motion "is not groundless and brought in bad faith or groundless and brought for purposes of harassment." TEX. R. CIV. P. 13. If the court finds that a pleading or motion is signed in violation of this rule, "the court . . . shall impose an appropriate sanction . . . upon the person who signed it, a represented party, or both." *Id.* "To award sanctions under Rule 13, the trial court must conduct an evidentiary hearing and the movant must present evidence at that hearing to show a pleading was groundless and brought in bad faith or for purposes of harassment." *Alwazzan v. Alwazzan*, 596 S.W.3d 789, 814 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

"Courts also possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system." *Brewer*, 601 S.W.3d at 718. "Inherent authority emanates 'from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities.'" *Id.* "A court's inherent authority includes the 'power to discipline an attorney's behavior.'" *Id.* "Courts are . . . empowered to punish an attorney's behavior even when the offensive conduct is not explicitly prohibited by statute, rule, or other authority." *Id.*

## Chapter 10 and Rule 13

Mr. Brualdi asserts that the trial court abused its discretion in concluding that sanctions were appropriate under Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13 because neither he nor his law firm signed the temporary injunction motion.

Chapter 10 and Rule 13 authorize a trial court to impose sanctions upon a person who signed a pleading or a person represented by the signatory. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a); TEX. R. CIV. P. 13. The trial court concluded that "Mr. Brualdi electronically signed the petition and the temporary injunction motion in violation of Texas Civil Practice & Remedies Code § 10.001(1) and § 10.001(2)" and "electronically signed a pleading or motion in violation of Rule 13."[9]

In support of his assertion that he did not sign the temporary injunction motion, Mr. Brualdi points to Texas Rule of Civil Procedure 21, which provides that "[a] document that is electronically served, filed, or issued . . . is considered signed if the document includes . . . 'a "/s/"' and name typed in the space where the signature would otherwise appear . . . or . . . an electronic image or scanned image of the signature." TEX. R. CIV. P. 13. Dr. Corwin's local counsel, Daniel Jackson,

---

[9] Finding of Fact No. 18 states: "Mr. Brualdi's name and law firm in the signature block of the petition and temporary injunction motion is an electronic symbol attached to the document that was executed or adopted by Mr. Brualdi with the intent to sign the document."

signed the motion for temporary injunction; Mr. Brualdi's name and law firm appear in the signature block of the motion. Mr. Brualdi argues that because he did not do what Rule 21 requires to create a signature—i.e., there is no /s/ and typed name in the signature space or an electronic or scanned image of a signature— Exxon Mobil failed to satisfy the mandatory threshold requirement entitling it to sanctions under Chapter 10 or Rule 13.

Even assuming that Brualdi is correct, and that therefore Chapter 10 and Rule 13 do not support sanctions, that would not change our analysis because we conclude that the trial court was authorized under its inherent authority to issue sanctions.

**Inherent Power to Sanction**

Brualdi asserts that the trial court abused its discretion in concluding that "[t]o the extent that sanctions are not appropriate under Chapter 10 or Rule 13 due to some technicality, the Court concludes that sanctions are appropriate under this Court's inherent authority."

The Texas Supreme Court has noted that "[l]awyers are under a professional obligation to act with commitment and dedication to their clients' interests, but they are neither duty-bound nor permitted to press for every possible advantage under the imprimatur of zealous advocacy." *Brewer*, 601 S.W.3d at 707 (citing *Nath*, 446 S.W.3d at 367)). "The discretion to determine the trial tactics and

litigation strategies to employ, while considerable, is cabined by ethical standards memorialized in sundry rules and statutes and is subject to the inherent authority of courts to preserve the integrity of our judicial system." *Id.*

"When a statute or rule addresses sanctions for particular conduct, a trial judge may not generally assess sanctions under its inherent authority." *Malouf v. Elana Spitzberg Tr.*, No. 05-15-00824-CV, 2016 WL 4158890, at *4 (Tex. App.—Dallas Aug. 5, 2016, no pet.) (mem. op.). However, trial courts have the power to sanction parties for bad faith abuse of the judicial process not covered by rule or statute. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997); *Anderson v. Hernandez*, No. 01-21-00490-CV, 2023 WL 8630980, at *8 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, pet. denied) (mem. op.). That is, inherent power exists only to the extent that other rules and standards do not apply. "A trial court may exercise this inherent authority as necessary to deter, alleviate, or counteract a bad faith abuse of the judicial process." *Phillips v. Am. Bankers Ins. Co. of Fla.*, No. 01-18-00375-CV, 2019 WL 3121856, at *7 (Tex. App.—Houston [1st Dist.] July 16, 2019, pet. denied) (mem. op.); *see Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that court has inherent power to aid in exercise of its jurisdiction, in administration of justice, and in preservation of its independence and integrity). Thus, "invocation of the court's inherent power to sanction necessitates a finding of bad faith." *Brewer*, 601 S.W.3d at 718.

"Bad faith" is the "intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts." *Id.* at 718–19; *Humphries Constr. Corp. v. Highland Vill. Ltd. P'ship*, No. 01-23-00651-CV, --- S.W.3d ---, 2025 WL 2471797, at *22 (Tex. App.—Houston [1st Dist.] Aug. 28, 2025, no pet.). "'Bad faith' includes 'conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose.'" *Brewer*, 601 S.W.3d at 719. On the other hand, "[e]rrors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith." *Id.* Bad faith can be established with direct or circumstantial evidence. *Id.*; *see IronOak, Inc. v. Porter*, No. 01-23-00924-CV, --- S.W.3d ---, 2025 WL 2933617, at *6 (Tex. App.—Houston [1st Dist.] Oct. 16, 2025, no pet.) (noting trial court may infer bad faith, improper motive, and intent to harass based on circumstantial evidence).

"Generally, courts presume that pleadings and other papers are filed in good faith." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). As the party seeking sanctions, Exxon Mobil bore the burden of overcoming this presumption of good faith. *See id.*

Here, the trial court found that "Mr. Brualdi's temporary injunction request was filed in bad faith and for an improper purpose." Specifically, it found that "Mr. Brualdi filed this lawsuit and requested an injunction solely for the purpose of trying to obtain a settlement from one of the defendants." The trial court

14

concluded that sanctions were appropriate under its inherent authority. Brualdi argues that the evidence does not support the trial court's finding of bad faith and improper purpose. We disagree.

At the sanctions hearing, the trial court was presented with ample evidence establishing that Brualdi acted in bad faith by attempting to enjoin the merger between Exxon Mobil and Pioneer for the purpose of extracting a settlement offer. The court heard the following testimony from Exxon Mobil's counsel, based on his personal experience, regarding Brualdi's business model:

> Here is how this works. . . . A case gets filed – and I know from experience because on that list of about 80, I have handled probably about 20 of those, including the one in the 11th, Brigham. A case gets filed. I get an e-mail from Mr. Brualdi attaching the complaint because he knows that for transactions where my firm is involved, I principally handle the litigation on those transactions.

> I know what the going rate is for settlement. You can ask Mr. Brualdi what he told me at the beginning part of the year about his current demand, but it doesn't change. So I'm not going to get into any particular settlement agreement that I advise clients on due to confidentiality, but I know two things. I know that there is additional disclosures and a fixed fee or we end up like we have in your court, litigating an injunction; and those are the two choices that clients have. So does Mr. Brualdi need to make a settlement demand? No, because I know what the terms are. My colleagues in the bar that handle these types of litigation, we know what the terms are. I can tell my client what to expect, and they can make a decision. And it's not so much making a settlement demand. It's acceding to what we know we have to give in order to make this risk, this case, go away; and in this instance Exxon Mobil chose not to do that.

Counsel testified that Brualdi's "rate to settle these cases" is "$425,000." The trial court was entitled to treat counsel's statements as evidence. *See Estate of Brown*, 697 S.W.3d 647, 654 (Tex. 2024) ("[W]hen, during an evidentiary hearing, counsel makes unsworn factual statements as an officer of the court, on the record and without objection from opposing counsel, such statements are properly considered as evidence."); *cf. Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023) (noting trial court may credit counsel's uncontested statements in open court as support for determination about state of discovery in case).

The trial court also admitted into evidence an affidavit from Exxon Mobil's counsel describing Brualdi's business model in detail. Counsel testified:

> I have personally litigated numerous prior cases against Brualdi. A significant portion of Brualdi's business model is based on challenging corporate transactions with litigation requesting injunctive relief, in hopes of extracting attorneys' fees as part of a settlement. Brualdi's approach is materially the same regardless of transaction or jurisdiction. In response to the announcement of a merger, Brualdi shows up in one of any number of state courts around the country—Texas, California, Florida, Illinois, Ohio, South Dakota, Massachusetts, certain counties in New York, just to name some—with the same cookie-cutter lawsuit filed on behalf of a single stockholder or a small number of stockholders who hold a de minimis number of shares of one of the companies involved in the transaction (usually the target company). The lawsuits typically claim that the transaction price is unfairly low regardless of the price being paid, that the financial advisors to the target company are conflicted because they are receiving an ordinary course contingent fee, that company insiders are self-interested because they are receiving standard change-of-control payments or other ordinary course compensation, and that the disclosure documents filed with the U.S Securities and Exchange Commission in connection with the vote of the target

16

company's stockholders suffer from omissions or misrepresentations that preclude stockholders from casting a fully informed vote.

In my experience with Brualdi, the lawsuits he files to challenge corporate mergers are meritless. The price paid by the acquiring company is a "fair" price as confirmed by a financial advisor to the selling company and as reflected by the overwhelming approval of the transaction by the target stockholders. The alleged conflicts among the financial advisor and company insiders are disclosed in one or more SEC filings and the disclosures about which Brualdi complains are both insignificant and known by Brualdi and his client and, therefore, there is no reason for a supplemental disclosure.

Brualdi files his merger lawsuits knowing that the lawsuit puts the defendants in a spot in which settling a meritless lawsuit is the least-worst option. Delaying a merger through protracted litigation or a temporary injunction could cause severe fluctuations in the stock price of one or both of the companies involved and could introduce other risks and uncertainties to the transaction. Such fluctuations and risks can jeopardize whether the merger is consummated or not. Brualdi's scheme capitalizes on this reality by putting the parties to the merger in the untenable position: Do they risk this merger or do they pay Brualdi the attorney's fees he is demanding even though his claims have no merit?

Brualdi's pernicious tactics are sometimes successful. Companies sometimes choose to settle and pay a "merger tax" in the form of Brualdi's attorney's fees rather than deal with the nuisance of a lawsuit and the risk, however small, that a merger might be enjoined.

However, in some cases, the companies choose to fight back against Brualdi. In those cases, Brualdi almost always quickly nonsuits his frivolous claims after his request for a temporary injunction or restraining order is denied.

Here, after the trial court denied his request for injunctive relief, Dr. Corwin

non-suited his claims against all the defendants ten days later.

17

In addition to this testimony, the evidence admitted at trial included a list of more than seventy cases in which Brualdi had filed a lawsuit seeking to block a corporate merger, the vast majority of which were later voluntarily dismissed.

Exxon Mobil's counsel also directed the trial court to two opinions in which courts criticized Mr. Brualdi and his firm. *See In re SS & C Techs.*, 948 A.2d at 1144 (imposing sanctions in merger lawsuit filed by Brualdi and noting "pattern of unethical conduct"); *Nye*, 9 N.Y.S.3d 592 at \*9, *rev'd on other grounds,* 43 N.Y.S.3d 21 (N.Y. App. Div. 1st Dept. 2016) (finding merger litigation "pernicious" based on, among other reasons, "[T]he Brualdi Law Firm ['s adoption of] inequitable litigation tactics and . . . advanc[ing of] meritless claims directed not at vindicating the rights of real shareholders but at maximizing the chance Brualdi Brand litigation will settle, resulting in awards of attorneys' fees that are wholly out of proportion to any real benefit conferred on shareholders.").

The trial court also heard Mr. Brualdi's testimony that he did not act in bad faith. Following an exchange with the court about whether $425,000 was Brualdi's rate for settling cases, the trial court stated, "[i]t is my job to judge the credibility as well. You can dance around this issue. The more you dance around the issue, the less credible I find you; and that goes to any fact findings that I would do." As the sole judge of the credibility of the witnesses, we defer to the

trial court's determination of credibility.  *See IronOak, Inc.*, 2025 WL 2933617, at *8.

Based on the evidence presented at the hearing, the trial court found that "Mr. Brualdi filed this lawsuit and requested an injunction solely for the purpose of trying to obtain a settlement from one of the defendants."  The court noted that "[t]his strategy is precisely the type of conscious doing of a wrong for dishonest, discriminatory, or malicious purpose that sanctions exist to deter."

In addition to its evidentiary challenge, Brualdi asserts that "[n]o Texas case supports Exxon Mobil's claim that 'filing pleadings to compel a more favorable settlement' is bad faith."  According to Brualdi, Exxon Mobil mischaracterizes the only case it cites for this claim, *Nath v. Texas Children's Hospital*.  It contends that *Nath* does not support Exxon Mobil's position or the trial court's conclusion that "filing pleadings to compel a more favorable settlement constitutes an improper purpose."  It further asserts that Exxon Mobil's mischaracterization of *Nath*, if accepted, "would make most civil litigation unlawful."

In *Nath*, the trial court imposed sanctions against a physician for filing groundless pleadings in bad faith and for an improper purpose against a hospital and medical school.  *See Nath*, 446 S.W.3d at 358.  The court of appeals affirmed the sanctions award.  *See id.* at 361.  The Texas Supreme Court concluded that the trial court did not abuse its discretion in sanctioning the physician for filing

19

frivolous pleadings because the physician was attempting to use discovery to force damaging, irrelevant information regarding the health of the chief of the medical school's plastic surgery division into the public domain to compel a more favorable settlement. *See id.* at 366.

Brualdi asserts that *Nath* is inapposite because it "says that filing groundless pleadings is improper," and "nothing about settlement motive was material to the holding in *Nath*." Contrary's to Brualdi's assertion, *Nath*'s holding was not based solely on groundless pleadings. The trial court found the pleadings "to be in bad faith (due to their irrelevance) *and* filed for an improper purpose (leveraging a settlement)." *Id*. at 365 (emphasis added). The Texas Supreme Court agreed, concluding that "the improper purpose of Nath's pleadings . . . indicates the trial court appropriately levied sanctions regarding this conduct." *Id.* at 366.

Brualdi also argues that Exxon Mobil's reading of *Nath* "would make it unlawful to file an amended petition, a supplemental answer, a summary judgment in advance of mediation, or any other instrument calculated to make a party's litigation position stronger." This argument misconstrues the trial court's sanction order. The court found that "Mr. Brualdi filed this lawsuit and requested an injunction *solely* for the purpose of trying to obtain a settlement" from Exxon Mobil, and that this conduct constitutes bad faith. *See Nath*, 446 S.W. 3d at 355 ("While litigation is contentious by definition and often utilized to compel a

desired end, we agree with the trial court that, on these facts, using a legal mechanism to force damaging, irrelevant information into the public domain and thereby compel a more favorable settlement constitutes an improper purpose."). The trial court did not conclude that every action that might lead to settlement is sanctionable.

Brualdi asserts that the trial court abused its discretion because Texas courts cannot impose sanctions about activity in unrelated matters in other states. According to Brualdi, the trial court improperly considered evidence of its litigation history in finding that he acted in bad faith and for an improper purpose.

The trial court found that Brualdi had consciously filed a groundless request for a temporary injunction to annoy, alarm, and abuse Exxon Mobil based, in part, on the following circumstantial evidence:

- Mr. Brualdi is a repeat-player that challenges merger transactions with meritless litigation in hopes of extracting attorney's fees for the firm's financial gain.

- Mr. Brualdi unleashes this strategy in the context of a business reality that puts the target of his lawsuit in a spot in which settling a meritless lawsuit is the least-worst option. Delaying a merger through protracted litigation or a temporary injunction will often cause severe fluctuations in the stock price of one or both of the companies involved. Such fluctuations can jeopardize whether the merger is consummated or not. Mr. Brualdi's scheme capitalizes on this reality by putting the parties to the merger in the untenable position: Do we risk this merger or do we pay Mr. Brualdi off even though his claims have no merit?

- Mr. Brualdi's approach is materially the same regardless of transaction or jurisdiction. In response to the announcement of a merger, Mr. Brualdi shows up in one of any number of state courts around the country with the same meritless, cookie-cutter lawsuit filed on behalf of a single stockholder who holds an undisclosed but typically *de minimis* number of shares of the target company's stock. Some of the companies who are sued elect to pay the merger tax. Some, however, do fight Mr. Brualdi. In almost every case where Mr. Brualdi loses the injunction or restraining order, he dismisses the case shortly thereafter.

The trial court did not sanction Mr. Brualdi or the firm for the actions he took in unrelated matters. Rather, the court considered the actions he had taken in previous cases in other courts only as evidence of his motive in this case ("This evidence . . . shows more than Mr. Brualdi simply exercising 'bad judgment or negligence' in bringing *this* lawsuit. Rather, the Court finds that Mr. Brualdi filed *this* lawsuit and requested an injunction solely for the purpose of trying to obtain a settlement from [Exxon Mobil].") (emphasis added). "[A] trial court may properly consider evidence of misconduct in other litigation." *IronOak, Inc.*, 2025 WL 2933617, at *8; *see Nath*, 446 S.W.3d at 372 (noting courts may consider "any prior history of sanctionable conduct on the part of the offender" as one factor in assessing pleadings sanctions); *see Bradt v. Sebek*, 14 S.W.3d 756, 767–68 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (finding that pattern of misconduct— including in other related litigation—demonstrated party's bad faith in filing pleadings); *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824–25 (considering evidence of party's conduct in other lawsuits to establish element of

"bad faith"). A trial court may infer bad faith from circumstantial evidence. *See Brewer*, 601 S.W.3d at 719; *IronOak, Inc.*, 2025 WL 2933617, at *6.

Based on our review of the record, we conclude that the trial court did not abuse its discretion by imposing sanctions on Brualdi under its inherent authority. Accordingly, we overrule Brualdi's issues.[10]

## Conclusion

We affirm the trial court's sanction order.

Kristin M. Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[10] In light of our disposition, we do not reach Brualdi's request that we vacate the trial court's findings of fact and conclusions of law. *See* TEX. R. APP. P. 47.1